**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KEITH WILCOX,

                                    Plaintiff,

            - v -                                             Civ. No. 9:19-CV-0715
                                                                        (LEK/DJS)

AUBURN CORRECTIONAL FACILITY,

                                    Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

KEITH WILCOX
Plaintiff, *Pro Se*
16-B-2493
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. LETITIA JAMES                         WILLIAM E. ARNOLD, IV, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendant
300 South State Street, Suite 300
Syracuse, NY 13202

**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        On June 11, 2019, *pro se* Plaintiff Keith Wilcox commenced this action in New York

State Supreme Court, Cayuga County, against Auburn Correctional Facility ("Auburn C.F.")[1]

asserting claims, pursuant to 42 U.S.C. § 1983 ("Section 1983 "), arising out of his

---

[1] The caption of the Complaint names Auburn C.F. as the sole Defendant, but the Complaint itself specifically identifies T. McCarthy and C.O. Dunham as Defendants.  The Clerk is directed to amend the Caption accordingly.

confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  Dkt. No. 2, Compl.  On June 17, 2019, Defendant removed this action from state court and paid the statutory filing fee.  Dkt. No. 1, Notice of Removal.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 4, Def.'s Mot.  In response, Plaintiff filed opposition to the Motion and a Cross-Motion to remand this action to state court.[2]  Dkt. No. 7, Pl.'s Opp. and Cross- Mot.  Plaintiff also filed a  Motion for the Appointment of Counsel.   Dkt. No. 8, Pl.'s Mot.  Defendant filed a reply in support of the Motion.  Dkt. No. 9, Def.'s Rep.

## I.  MOTION TO REMAND

### A.  Legal Standard

Section 1441, which sets forth the jurisdictional basis for removal, states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) (explaining that Section 1441 "authorizes the removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought,

---

[2] While Plaintiff's cross motion was not properly noticed, Defendant responded to the request for remand in the Reply Memorandum of Law.  *See* Dkt. No. 9 at pp. 3-5.

originally, in a federal district court").  However, "'[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability.'"  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

28 U.S.C. § 1446 ("Section 1446"), which sets forth the procedural requirements for removal to federal court, states:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1).  The thirty-day window for removal contained in Section 1446(b)(1), while not jurisdictional, is "rigorously enforce[d]" by courts absent a finding of waiver or estoppel.  *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1046 (2d Cir. 1991), *superseded on other grounds in Contino v. U.S.*, 535 F.3d 124, 127 (2d Cir. 2008).

Plaintiff objects to Defendant's removal and argues that the District Court lacks

jurisdiction because he seeks damages in the amount of $2,017.84.[3]  Dkt. No. 7 at p. 3.[4] Plaintiff also claims that venue is proper in state court because the underlying events occurred in Cayuga County.  *Id.*  In opposition, Defendant argues that the monetary amount requested is immaterial because the action was removed based upon federal question jurisdiction, not diversity jurisdiction.  Dkt. No. 9 at p. 3.

## B.  Analysis of Plaintiff's Motion to Remand

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332.  Under these statutes, federal jurisdiction is available only when a federal question is presented or when the parties are of diverse citizenship and the amount in question exceeds $75,000.  Defendant removed this action pursuant to Section 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "Generally, '[t]he presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  *NYU Hosp. Ctr.-Tisch v. Local 348 Health & Welfare Fund*, 2005 WL 53261, at *1 (S.D.N.Y. Jan. 6, 2005) (quoting *Caterpillar, Inc. v. Williams*, 482

---

[3] The Complaint contains several requests for monetary relief.  Plaintiff seeks to recover lost income ($291.84), filing fees, postage, and copy fees.  Compl. at pp. 3–4.  Plaintiff seeks to be reimbursed for the cost of filing his Article 78 petition ($333.34) and "one hundred dollars per day for unlawful confinement" totaling $700.00.  *Id*. at p. 4.  In his request for relief, Plaintiff seeks $1,000.00 in compensatory and punitive damages.  *Id*. at p. 5.

[4] When referring to submissions, the Court will cite to the page numbers automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

U.S. 386, 392 (1987)) (internal quotation marks omitted).

On its face, Plaintiff's Complaint asserts claims arising under the Constitution of the United States. The Complaint is entitled "CIVIL COMPLAINT UNDER 42 U.S.C.A. § 1983." Compl. at p. 1. In the Preliminary Statement, Plaintiff states that he seeks relief, "pursuant to 42 U.S.C. § 1983, alleging violation of right(s) secured under the United States Constitution." *Id.* Additionally, Plaintiff seeks,"[d]eclaratory judgment that the acts, policies, and practices of the defendant(s), violated the plaintiff(s) rights under the United States Constitution." *Id.* at p. 5. Nevertheless, Plaintiff contends that removal jurisdiction is unavailable. *See* Dkt. No. 7.

First, Plaintiff argues that his claims should remain in state court because the amount in controversy is $2,017.84. Dkt. No. 7 at p. 3. "Where a Federal question is properly presented, there is no (minimum) amount in controversy requirement." *Farr v. Gonzo Corp.*, 212 F.Supp.2d 199, 202 (S.D.N.Y. 2001). The Notice of Removal states:

> The above described action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. §1331 and is one which may be removed to this court by the Petitioner pursuant to the provisions of 28 U.S.C. §1441 in that the action arises, *inter alia*, under federal law, namely, 42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S. Constitution.

Dkt. No. 1 at ¶ 2.

Accordingly, the "amount in controversy requirement" of 28 U.S.C. § 1332 does not apply.

Next, Plaintiff asserts that because both state court and federal court have jurisdiction

over his federal constitutional claims brought under Section 1983, his claims should have remained in state court.  Dkt. No. 7-1 at pp. 2-3.  Plaintiff cites to *Haywood v. Drown*, 556 U.S. 729, 731 (2009), which states that "[i]n our federal system of government, state as well as federal courts have jurisdiction over suits brought pursuant to 42 U.S.C. § 1983."  While Plaintiff is correct that both state and federal courts may entertain suits brought pursuant to Section 1983, this concurrent jurisdiction does not preclude removal.  Indeed, "it is the existence of concurrent jurisdiction which allows a defendant to remove an action from state court to federal court."  *See Johnson v. Rock,*  2014 WL 7410227, at *5 (N.D.N.Y. Dec. 31, 2014) (citing *Dorsey v. City of Detroit*, 858 F.2d 338, 341 (6th Cir. 1988) ("The weight of judicial authority supports the conclusion that 'a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.'")).

Because on its face, Plaintiff's Complaint asserts federal constitutional claims pursuant to Section 1983, and Plaintiff points to nothing which would defeat subject matter jurisdiction, this Court has federal question jurisdiction over this removed action pursuant to Section 1331.  Accordingly, the Court recommends[5] denial of Plaintiff's motion to remand.

---

[5] *Williams v. Bee miller, Inc.*, 527 F.3d 259, 266 (2d Cir. 2008) ("A motion to remand is not a 'pretrial matter' under § 636(b)(1)(A) and a magistrate judge presented with such a motion should provide a report and recommendation to the district court").

## II.  DEFENDANT'S MOTION TO DISMISS[6]

### A.  Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*,

---

[6] Defendant argues that Plaintiff's claims must "be deemed abandoned" because he did not respond to Defendant's specific arguments. *See* Dkt. No. 9 at pp. 6-7.  Notwithstanding Plaintiff's failure to address the arguments in the Motion, the Court will not consider the Motion defaulted upon, and will still consider the merits of the Motion. As the Second Circuit has described

> [W]ith respect to a motion pursuant to Fed.R.Civ.P. 12(c) to dismiss an action on the basis of the pleadings, [ ] "[w]here ... the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute 'default' justifying dismissal of the complaint." *Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir. 1983).  The same principle is applicable to a motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss an action on the basis of the complaint alone. Such motions assume the truth of a pleading's factual allegations and test only its legal sufficiency. *See, e.g., De Jesus v. Sears, Roebuck & Co.*, Inc. 87 F.3d 65, 69 (2d Cir. 1996). Thus ... the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.  If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.

*McCall v. Pataki,* 232 F.3d 321, 322-23 (2d Cir. 2000).

532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across

the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

### 1. Consideration of Submissions Outside the Pleadings

In support of the Motion to Dismiss, Defendant provided several documents including: (i) a misbehavior report (Dkt. No. 4-2 at p. 3); (ii) documentation related to an inmate witness' refusal to testify at Plaintiff's disciplinary hearing (Dkt. No. 4-2 at p. 4); (iii) hearing record sheet (Dkt. No. 4-2 at p. 2); (iv) certified copy of the disciplinary hearing transcript (Dkt. No. 4-3 at pp. 1-9); and (v) disciplinary hearing disposition (Dkt. No. 4-2 at pp. 1, 5-6). Additionally, Plaintiff attached documents to his opposition and Cross-Motion including: (i) copy of the disciplinary hearing transcript (Dkt. No. 7 at pp. 5-12); (ii) inmate counseling notifications dated May 5, 2018 and June 13, 2018 (Dkt. No. 7 at pp. 13-14); (iii) disciplinary hearing disposition (Dkt. No. 7 at pp. 15-17); and (iv) documents related to Plaintiff's Article 78 petition (Dkt. No. 7 at pp. 19-33).

Pursuant to the Federal Rules of Civil Procedure, "[i]f, on a motion under Rule 12(b)(6) or 12(c) matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). In this case, no discovery has been undertaken. Accordingly, the Court declines to convert Defendant's Motion into one for summary judgment under Rule 12(d). *See Gomez v. City of New York*, 2017 WL 1034690 at *4 (E.D.N.Y. Mar. 15, 2017) (declining to convert motion for judgment on the pleadings to a motion for summary judgment where the records

submitted by parties did not establish a comprehensive record).

A court may, however, consider certain limited types of submissions in a Rule 12(b)(6) motion that were not filed with the Complaint without converting the motion to a motion for summary judgment.

> [G]enerally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.

*Myers v. Camden Cent. Sch. Dist.*, 2012 WL 2921574, at *4 (N.D.N.Y. July 17, 2012); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotations omitted).

The Second Circuit has elaborated on the limited circumstances in which extrinsic evidence may be considered "integral," and such explanation is instructive.

> A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough. In

> most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 558-59 (2d Cir. 2016) (internal quotation marks and citations omitted).

With respect to the exhibits, while these submissions were not attached to the Complaint, Plaintiff referred to the misbehavior report, hearing disposition, and Article 78 proceeding in the Complaint. Compl. at p. 3. These submissions are therefore appropriately considered by the Court without converting Defendant's Rule 12 motion to a Rule 56 motion for summary judgment. *See, e.g., Islam v. Fischer*, 2008 WL 650380, at *2 (S.D.N.Y. Mar. 6, 2008).

With these standards in tow, I consider the plausibility of Plaintiff's Complaint.

## B. Summary of Complaint[7]

On June 13, 2018, Plaintiff was working as an embossing porter at Auburn C.F. Compl. at p. 3. Plaintiff told Correction Officer M. Dunham ("Dunham") that he needed cleaning supplies from the industrial mess hall. Dkt. No. 7 at p. 22. Dunham gave Plaintiff permission to gather supplies from the mess hall. *Id.*; Compl. at p. 3.

---

[7] The relevant facts adduced from the Complaint, exhibits, and opposition are taken as true. *See, e.g., Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) (per curiam) (approving district court's decision to deem *pro se* plaintiff's complaint to include additional facts submitted in opposition to motion to dismiss); *Crum v. Dodrill*, 562 F. Supp. 2d 366, 374 n.13 (N.D.N.Y. 2008) (treating *pro se* plaintiff's additional submissions in opposition to a motion to dismiss as effectively amending the allegations in his complaint); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

The same day, Dunham issued a misbehavior report charging Plaintiff with being "out of place" in violation of Prison Rule 109.10. Compl. at p. 3; Dkt. No. 4-2 at p. 3. In the misbehavior report, Dunham noted that "[w]hile on my rounds in Plate 2 Embossing, I witnessed inmate Wilcox climbing stairs on north west side of shop with 2 cleaning supply bottles. I asked him if he had a pass. He said no." Dkt. No. 4-2 at p. 3. Plaintiff was placed in keeplock confinement for seven days, pending a disciplinary hearing. *Id*. at p. 1.

On June 19, 2018, Lieutenant Kelsey ("Kelsey")[8] presided over a Tier II disciplinary hearing related to the misbehavior report. Compl. at p. 3; Dkt. No. 4-3 at p. 2. Plaintiff asked Kelsey to call an inmate witness and Dunham to testify at the hearing. Dkt. No. 4-3 at p. 2. The inmate witness was asked to attend the hearing, but he refused. Dkt. No. 4-2 at p. 4; Dkt. No. 4-3 at p. 6. Dunham testified at the hearing and Plaintiff was afforded the opportunity to pose questions to Dunham. Dkt. No. 4-3 at pp. 6-8.

At the conclusion of the hearing, Kelsey found Plaintiff guilty of violating Prison Rule 109.10. Compl. at p. 3; Dkt. No. 4-2 at pp. 1 & 6; Dkt. No. 4-3 at p. 1. Plaintiff was counseled, reprimanded, and referred to the program committee. Dkt. No. 4-2 at pp. 1 & 5. Plaintiff was fined $5.00 and suffered a loss of income. Compl. at p. 3.

Plaintiff appealed the disciplinary determination to Auburn C.F. Superintendent T. McCarthy ("McCarthy"). Compl. at p. 3. On June 22, 2018, McCarthy affirmed the decision. *Id*.; Dkt. No. 7 at p. 32.

---

[8] Kelsey is not identified as a defendant in the caption or in the list of parties. *See* Compl. at pp. 1-2.

On June 25, 2018, Plaintiff filed an Article 78 petition against Commissioner Anthony Annucci challenging the disciplinary determination. Compl. at p. 3; Dkt. No. 7 at pp. 26-30. On February 26, 2019, counsel for Annucci advised the Clerk of the Appellate Division, Third Department, that the respondent would not submit a brief because the disciplinary determination had been "reversed and expunged" from Plaintiff's disciplinary records. Dkt. No. 7 at p. 32. Plaintiff was reimbursed the amount of the fine. *Id*. at pp. 32-33.

Construing the Complaint liberally, Plaintiff asserts Fourteenth Amendment due process claims. *See generally,* Compl. Plaintiff seeks declaratory relief, compensatory damages, and punitive damages. *Id*. at p. 5. Plaintiff also seeks injunctive relief. Compl. at p. 4; Dkt. No. 7 at p. 25.

### C.  Analysis of Defendant's Motion to Dismiss

The Motion seeks dismissal of Plaintiff's Complaint against Auburn C.F. pursuant to the Eleventh Amendment. Dkt. No. 4-4, Def.'s Mem. of Law. The Motion also seeks dismissal of claims against Dunham and McCarthy based on the lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. *Id*.

### 1.  Claims Against Auburn C.F.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of sovereign immunity. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress

unequivocally abrogates state immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate state immunity through 42 U.S.C. § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in Plaintiff's Complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Moreover, "[f]or Eleventh Amendment purposes, governmental entities of a state that are considered 'arms of the state' receive Eleventh Amendment immunity." *Dawkins* v. State of New York, 1996 WL 156764, at *2. It is well-settled that DOCCS is "entitled to assert the state's Eleventh Amendment immunity where, for practical purposes, the agency is the alter ego of the state and the state is the real party in interest." *Santiago v. New York State Dep't. of Corr. Serv.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991) (citations omitted). A state correctional facility, which has no separate legal existence, is generally referred to as a "branch" of DOCCS and, as such, is immune from § 1983 liability. *See Rivera v. Goord*, 119 F. Supp.2d 327, 336 (S.D.N.Y. 2000); *see also Simmons v. Gowanda Corr. Facility*, 2013 WL 3340646, at *2 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)). As a result, Auburn C.F. is immune from liability for money damages in this action.

To the extent that the Complaint could be construed to include a request for injunctive relief against Auburn C.F., that claim is barred by the Eleventh Amendment. *See Daisernia v. State of N.Y.*, 582 F. Supp. 792, 798 (N.D.N.Y. 1984) (dismissing claim for injunctive relief against Greene Haven Correctional Facility as barred by the Eleventh Amendment) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984)); *Bryant v. New York State Dep't of Corr. Servs. Albany*, 146 F.Supp.2d 422, 426 (S.D.N.Y. 2001) (dismissing claims for injunctive relief against Sing Sing Correctional Facility holding that "[s]ection 1983 'permits individuals to seek injunctive relief against actors in their official capacities, [. . .], and to seek damages against them in their personal capacities.' ") (internal citation omitted).

Accordingly, the Court recommends that Defendant's Motion be granted as to Plaintiff's claims against Auburn C.F.

### 2. *Claims Against Dunham and McCarthy*

While Dunham and McCarthy were omitted from the caption of the pleading, they are listed as parties to the action. *See* Compl. at pp. 1-2. In light of Plaintiff's *pro se* status, the Court will consider individuals identified in both the caption of the Complaint, and the section following the heading "Parties" as named Defendants. *See* Note 1 *supra*. The Court construes the Complaint as containing claims for monetary damages against Defendants in their individual and official capacities. Compl. at p. 5.

In the Motion to Dismiss, counsel for Auburn C.F. argues that Plaintiff's claims against Dunham and McCarthy are subject to dismissal for lack of personal jurisdiction. *See*

Dkt. No. 4-4 at p. 7.  Counsel also asserts that, even assuming that the Court directs service of the Complaint upon Dunham and McCarthy, the Fourteenth Amendment claims against the Defendants are subject to dismissal for lack of personal involvement and/or failure to state a claim.  *See id.* at pp. 8-13.  In the alternative, counsel argues that McCarthy is entitled to qualified immunity.  *See id.* at pp. 13-15.

### a.  Claims Against Defendants in their Official Capacity

Actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).  Therefore, the Eleventh Amendment bars all money damages claims against state officials acting in their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also Tolliver v. New York State Corr. Officers*, 2000 WL 1154311, at * 2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."); *see also James v. Suffolk Cty. Corr. Facility*, 2014 WL 4659300, at *5 (E.D.N.Y. Sept. 17, 2014) (stating that official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).  Thus, I recommend that Plaintiff's § 1983 claims for money damages against Defendants in their official capacities be dismissed on Eleventh Amendment grounds.

### b.  Personal Jurisdiction

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).  Because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint, before it is served upon the Defendants.  *See Jackson v. Nixon*, 747 F.3d 537, 540 (8th Cir. 2014) (reasoning that the district court is required under the Prison Litigation Reform Act to screen prisoner complaints prior to service); *see also Wallace v. Fegan*, 2010 WL 11537503, at *4 (M.D. Pa. Nov. 15, 2010) ("Pursuant to 28 U.S.C. § 1915A, the court must review a pro se prisoner complaint before service is made on any defendants named in the complaint. The screening process is required for all pro se prisoner complaints filed in district court.") *aff'd*, 455 Fed. Appx. 137 (3d Cir. 2011).

Removal of a complaint does not divest the District Court of this obligation.  After removal, even if one defendant has been served, the District Court may still conduct a preliminary review of the claims.  *See Simmons v. Aranda*, 2013 WL 663922, at *1 (N.D. Cal. Feb. 22, 2013) (conducting a pre-service review under 28 U.S.C. § 1915A after the defendants removed the action pursuant to §1441); *see also Carrea v. Cal.*, 2008 WL 3931182, at *1 (C.D. Cal. Aug. 26, 2008) (finding that the screening of the complaint was

only "practicable" after the action was removed to federal court) (collecting cases); *Hairston v. Blackburn*, 2010 WL 145793, at *3 (S.D. Ill. Jan. 12, 2010) (". . . when a prisoner case is removed from state court to federal court at least one defendant has already been served with the complaint and, often, has filed a response or motion concerning it. In such a case, defendants may be responding to claims that would not survive the Court's review under § 1915A.").

Given that service of the Complaint is not required prior to section 1915A review, it is recommended that the motion to dismiss for lack of personal jurisdiction be denied.

### c. *Personal Involvement*

Counsel also argues that the Fourteenth Amendment claims against Dunham and McCarthy are subject to dismissal based upon the theory that there are no allegations that they were personally involved in any wrongdoing.  Dkt. No. 4-4 at pp. 8-12.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Moreover, "the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright*, 21 F.3d at 501) (further citations omitted).  "[M]ere 'linkage in the prison chain of command' is insufficient to

implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."
*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d
205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held
liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official
may be established if:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference to the rights of inmates
> by failing to act on information indicating that unconstitutional
> acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873 (citations omitted).

### i. Dunham

Construing the Complaint liberally, the basis for establishing Dunham's personal
involvement is Plaintiff's claim that he issued a false misbehavior report and proffered false
testimony during the disciplinary hearing.

It is well settled that prison inmates do not have a general constitutional protection
from being falsely accused in a prison misbehavior report. *Boddie v. Schnieder*, 105 F.3d
857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In
*Freeman*, the Second Circuit held that the Constitution merely guarantees inmates "the right

not to be deprived of a protected liberty interest without due process of law." *Freeman v. Rideout*, 808 F.2d at 951. "As long as prison officials grant the inmate a hearing and an opportunity to be heard, the 'filing of unfounded charges d[oes] not give rise to a *per se* constitutional violation actionable under section 1983.'" *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v. Rideout*, 808 F.2d at 953). "The filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted); *see also Mitchell v. Senkowski*, 158 Fed. Appx. 346, 349 (2d Cir. 2005); *Freeman v. Rideout*, 808 F.2d at 951.      Plaintiff's due process claim against Dunham is, therefore, subject to dismissal.

### ii. *McCarthy*

With respect to McCarthy, even if all the *Colon* factors continue to exist after the Supreme Court decision in *Ashcroft v. Iqbal* dismissal on this claim is appropriate: none of the factors set forth in *Colon* provide a basis on which to hold McCarthy liable. Plaintiff does not plausibly allege that McCarthy participated directly in the violation, that he created a policy or custom under which unconstitutional practices occurred, or that he was grossly negligent in supervising subordinates who committed the wrongful acts or omissions. Rather, the only basis under *Colon* that Plaintiff plausibly alleges could be that McCarthy after being informed of the violation through an appeal, failed to remedy the wrong.

"Courts in the Second Circuit are split over whether an allegation that a defendant

affirmed a disciplinary proceeding determination is sufficient to establish personal liability for supervisory officials." *Jean-Laurent v. Lane*, 2016 WL 4775742, at *28 (N.D.N.Y. Aug. 18, 2016), *report and recommendation adopted*, 2016 WL 4768828 (N.D.N.Y. Sept. 13, 2016).

> The distinction between those cases that hold that affirmance of a disciplinary hearing is enough and those that hold it is not appears to be that while personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results.

*Brown v. Brun*, 2010 WL 5072125, at *2 (W.D.N.Y. Dec. 7, 2010) (internal quotation marks omitted) (citations omitted).    In cases such as this "where the only allegation against a defendant is that he affirmed a disciplinary hearing determination on appeal (as opposed to participating in a proactive review of the administrative process), such an allegation is insufficient to state personal involvement by that defendant." *Long v. Crowley*, 2010 WL 5129102, at *1 (W.D.N.Y. Dec. 10, 2010); *see also Scott v. Frederick*, 2015 WL 127864, at *17 (N.D.N.Y. Jan. 8, 2015) ("Plaintiff fails to allege a single fact from which it could plausibly be inferred that Defendant Prack did anything other than rubber-stamp his disciplinary determination."). Accordingly, it is recommended that the claims against McCarthy be dismissed, without prejudice, based on lack of personal involvement.

### d.  Merits of Fourteenth Amendment Claims

Even if Plaintiff pled that Dunham and McCarthy were personally involved in the disciplinary determination, the Fourteenth Amendment claims would still fail.

To successfully state a claim under Section 1983 for denial of due process arising out

of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted); *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000). In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 483-84. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Palmer v. Richards*, 364 F. 3d 60, 64 (2d Cir. 2004). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *Id.*

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin*, the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days can be found to be atypical even if under "normal conditions." *Ortiz v.*

*McBride*, 380 F.3d at 654; *Colon v. Howard*, 215 F.3d at 231.

Before discussing alleged procedural violations, Plaintiff must first plead facts to establish that he had a liberty interest in being free from confinement in keeplock. Here, Plaintiff claims that Defendants violated his due process rights when they confined him in "keeplock" for seven days prior to the disciplinary hearing.[9] This brief period of disciplinary confinement, alone, does not "implicate a liberty interest protected by the due process clause." *Jermosen v. Cahill*, 159 F.3d 1347 (2d Cir. 1998) (affirming dismissal of due process claim based upon confinement in keeplock for six days prior to a hearing). Thus, in order to determine whether Plaintiff suffered an atypical hardship, and therefore has been deprived a liberty interest, the Court must look to "the conditions of the imposed confinement relative to the ordinary prison conditions[.]" *See Moates v. Ashley*, 125 F.3d 844 (2d Cir. 1997) (finding that six day pre-hearing keeplock was not atypical and significant); *Reynoso v. Selsky*, 292 F. App'x 120, 123 (2d Cir. 2008). As presently pled, however, the Complaint lacks any facts related to the conditions of keeplock confinement or any allegations that plausibly suggest that Plaintiff's keeplock confinement significantly differed from typical prison conditions. Thus, Plaintiff has failed to plead the existence of a protected liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) (reasoning that the plaintiff offered no evidence in support of his argument that his 21–day pre-hearing keeplock confinement was atypical or significant); *Keitt v. NYS Dep't of Corr. & Cmty. Supervision*,

---

[9] Plaintiff was not confined to the Special Housing Unit ("SHU") at the time of the hearing or as a result of the sanctions. Dkt. No. 4-3 at p. 9.

2015 WL 2383687, at *13 (W.D.N.Y. May 19, 2015) ("Amended Complaint contains no allegations suggesting that the seven days of keeplock confinement plaintiff served was atypical or significant. Therefore, I recommend that his due process claim be dismissed.").

### e. Dismissal With Leave to Amend

Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704–05 (2d Cir.1991); *see also* FED. R. CIV. P. 15(a) ("The court should freely give leave when justice so requires."). As outlined above Plaintiff has failed to allege sufficient facts to establish the personal involvement of either individual Defendant or the existence of a protected liberty interest. In light of his *pro se* status, prior to outright dismissal, it is my recommendation that Plaintiff be given an opportunity to amend his Complaint. *See Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995).

Accordingly, the Court recommends that the Motion to Dismiss be granted.[10]

### III. PLAINTIFF'S MOTION FOR COUNSEL

Turning to Plaintiff's Motion for Appointment of Counsel (Dkt. No. 8), courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

---

[10] Because the Court recommends that dismissal be granted on the merits of Plaintiff's claims, it does not reach the alternative qualified immunity argument.

*-24-*

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).  This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge v. Police Officers*, 802 F.2d at 621).  The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In the present case, the Court has found that the Complaint is insufficient to state a claim.  Since Plaintiff has failed to establish that his claims are likely to be of substance, the Court denies his motion for appointment of counsel.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that the Clerk of the Court shall amend the docket to include Dunham and McCarthy as Defendants; and it is further

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 4) be **GRANTED**

*-25-*

with leave to amend; and it is further

**RECOMMENDED**, that Plaintiff's Cross-Motion to Remand (Dkt. No. 7) be **DENIED**; and it is

**ORDERED**, that Plaintiff's Motion for Counsel (Dkt. No. 8) is **DENIED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.__  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: October 1, 2019
　　　Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

*-26-*